to our second day of this week's sitting in Jacksonville. Judge Legault and I are especially pleased to have the privilege of sitting with our colleague, Judge Joe Flatt, in the Judge Joe Flatt courtroom. I can't imagine a greater honor than to get to sit with the judge to our left. One other announcement before we begin. When I was practicing, and even when I was a law clerk, I would hear the judges say, and I always thought it was good advice, that our traffic light system is very obvious. Green lights mean go, yellow lights mean slow down, and then red light means to stop. Those are not aspirational, okay? That's, we treat them like the real thing. So with that, we'll begin with our first case. We have one of our attorneys who graciously agreed to appear over Zoom, and we'll start with counsel for the appellants in the case of Nolen v. Wyndham Vacation Resorts. Counsel, whenever you're ready. Thank you, Your Honor. May it please the court, my name is Patrick Barthel, and I represent the plaintiffs in this case, a certified class of just under one million timeshare purchasers whose claims at present have been extinguished. Counsel? Yes, Your Honor. If you took all your claims together, what remedies did you see? We saw reimbursement of the amounts that were excessively paid. What remedies, particularly? Damages, Your Honor. Calculated how? Well, that depends on the substantive claims that can be pursued. If the claims under the trust code, 802 of the trust code are permitted, the trustee has the duty to prove that all of those transactions were fair. Short of that, all that money needs to be returned. What remedies did you seek? One was the money damages. Yes, Your Honor. All right, and how would that be calculated? It would be calculated based on, as to the surplus trust fund, the amounts that were over. Money that was still there. That's one measure, yes, Your Honor. Is that equitable relief or legal relief? You're seeking an order directing disbursement of the money? As to the surplus trust fund, yes, Your Honor. All right, so what other form of relief? Come again? What other forms of relief? So you have the money, this so-called excess money that was paid in. Correct. Okay, so you want that ordered return to the members? Yes, Your Honor. All right, what other relief? We're not seeking to remove the trustee at this time, if that's the question that you're asking. I'm just asking what kinds of remedies did you seek? Monetary damages. Or they take them off. Monetary damages, Your Honor. Monetary damages in the form of these. Why didn't you sue the trustees? The individuals? Excuse me, the board of directors of the fair share. In a prior case, argued by the state. No, not the prior case, right now. Why didn't you sue the, I'm just curious. You could have sued them two ways. You could have sued the board of directors and get an in personam order requiring them to comply with the bylaws, hold an annual meeting and all those other things, that's one. Then you could have had a damages action for breach of fiduciary duties of the board of directors to the members. Yes, Your Honor. Practically speaking, it became quite apparent to us we were never gonna get a substantive ruling if we had more than one defendant. We've been trying to litigate this case for a long time and at some point we had enough of being thrown out on shotgun pleading grounds, so we said we're gonna have one defendant and we're gonna try and see if we can get some relief. At fair share's memorandum in opposition to certification of the class, they represented that there were substantial numbers of members who were satisfied with the arrangement as it exists. Yes, Your Honor, they represent that. There are... Is it true that there are those people? There are, this was brought up in the briefing related to the experts and that survey has significant substantive problems with it, not the least of which was... If there was an evidentiary hearing held, would the court probably find that in the class of 400, what do you got, 400,000? It's just under a million. All right, in the class of 400,000, I would say, there are some who are like your clients, the class plaintiffs, and there are some who would want the status quo ante. Well, I... Let's oppose that. I think if you asked any of the class members, do you think you should pay more or pay less, they would say we should pay less. No, I understand. Are there some who are satisfied with the arrangement? I think there are some who responded to a survey who may or may not have been Wyndham fair share, timeshare members, who said they were satisfied with it as they knew, as what they knew, to the extent they know these facts. I doubt that any reasonable class member would say, yes, we should be playing inflated amounts. Yes, you should be sitting on millions of dollars a year that you're supposed to return to us. I don't think that's a reasonable assumption. In other words, you think everybody's in the same position and is seeking the same relief, all 400,000. Yes, Your Honor. You're saying that as an officer of the court. Well, again, we're not seeking removal of the trustee. No, no, I'm not talking about removing the trustee. I'm talking about relief. You have 400,000 people that all seek exactly the same relief. Damages, yes, Your Honor. All of them. Yes. If there were some who did not want the relief, you've got a Rule 19 problem, don't you? Well, I think we'd have potentially a Rule 23 problem, but this is a certified class. With Rule 19? Well, yeah, 20 year of parties, yes, Your Honor. Indispensable party rule. Yes. Indispensable parties. Sure. OK. So if you have some members of the class who do not want the remedy that you seek and the complaint is you brought it, you've got a 19 problem. They have to be joined as a defendant. Well, perhaps, but assuming a set of facts, it isn't true. We certified a class. We sent notice to a million people, and those people could opt out if they didn't like the. Opting out would not solve the Rule 19 problem. The reason I'm asking this question is because the law says we have to inquire sui sponte whenever it appears that there might be a Rule 19 problem, where indispensable parties are not joined as defendants. Yes, Your Honor. And the concern is that the individual board members should have been added as defendants in this case. No, no. I'm talking about the 400,000, 400,000 in your class. Yes, Your Honor. If there's some in the 400,000 who are satisfied with the status quo ante, then they're in opposition to the class plaintiffs. Do you understand that? I understand it entirely, yes. Then the law is either you join the ones that are satisfied as parties defendant, or the case gets dismissed. Again, I would say, in practice, we sent notice to those people. If they wanted to intervene and say, no, we disagree, they could have done that. We had nominal number of opt-outs in a class. There's a due process problem, so the opt-out notice doesn't solve that. Well, Your Honor, I- If the remedy, if the remedy, the reason I asked about the remedies, if all the remedies you sought in your original complaint and all the counts put together, if all those remedies that were not sought by some of the class, do you understand, because they preferred the status quo ante, then you have a divided class. And there are two problems. One is you say, well, you can opt out. The problem with opting out is they're injured anyway if they're opt-out. That's the due process problem. And that's why Rule 19 comes into play. You've got to bring them into the case as defendants. It's kind of unfair. I'm raising this question because- I was about to say, Your Honor- And then I'll quit. I'm doing it because we have a sui sponte obligation in the face of information that all 400,000 are not in the same position. In fact, they're antagonistic. I would say- Notwithstanding what the court did in certifying the class. We haven't, obviously, briefed the issue of Rule 19. I think if the factual basis for your concern is the expert report relied upon in opposition to summary judgment or to class certification, excuse me, there are significant substantive problems with that expert report, with that particular survey in particular, and those issues were never ruled upon by the district court because they were found to be moved after summary judgment was entered. So I think- But the Rule 19 problem is present at the beginning of the case. Do you understand? You don't wait for summary judgment or anything else that's right there at the beginning when you allege a class of 400,000 people. I'm going to admit I'm confused because I would think that this issue would come up in the Rule 23 setting about whether you have a certifiable class, whether you have divisions within that class or- Well, you have two. You're familiar with Valley Drugs. No, Your Honor, I'm not. You're not? Valley Drugs is the leading case. I happen to have authored it in this circuit on certifying a class when you have opposing class members. Thank you, Your Honor. I see I'm out of time. I'm going to quit and give you time, but that's a Rule 23 and a due process and a Rule 19 problem all balled into one. That's all I'm saying. Thank you. I see I'm out of time. Yeah, it's because the court took up so much of your time and that happens sometimes where we're interested. Why don't you take another two minutes if there's anything that you'd like to address so that your opposing counsel can then- Sure. I'll give you an uninterrupted two minutes, okay? I'd like to just highlight three facts that are not in dispute. The first is that the trustee fair share was wholly operated and controlled by employees of Wyndham throughout the entire existence of the trust. The second is that despite that control and despite the fact that Wyndham has collected hundreds of millions of dollars for services rendered to the trust beneficiaries, fair share has never performed any analysis of any kind to determine whether any of those amounts were fair or reasonable. And third, there's no dispute that the trustee over collects by millions of dollars a year the fees that each class member is required to pay as part of the program, resulting in the substantial yearly surplus that we discussed earlier. None of those facts are in dispute, yet it's within that factual context that the district court enters summary judgment in favor of the trustee, finding that there had been no breach of fiduciary duty. As you know, we raised three issues related to the interpretation of the trust code in the motion to dismiss order, related to the striking of the Second Amendment complaint, sua sponte and without any sort of procedural due process protections, and that the summary judgment order was entered in error when the district court ignored most of that undisputed evidence, expressly ignored most of that undisputed evidence I just discussed. As to the striking of the Second Amendment complaint, there's just one other sort of factual context I want to draw the court's attention to. The Second Amendment complaint, simultaneous with the filing of the Second Amendment complaint, plaintiffs also filed a motion to extend the deadlines because class third had already run by the time that amended pleading was filed. That motion was unopposed. We then submitted a joint schedule in which every deadline was also agreed except for one with the defendant. So there was no prejudice to the defendant. It did not argue that there had been any. I see my two minutes are up, thank you. Thank you, counsel. We'll next hear for counsel for the appellees over the video monitor. May it please the court, Joseph Lang from Carlton Fields on behalf of Fair Share Vacation Owners Association. Thank you to the court and to my colleague for accommodating my ability to appear by Zoom today. We appreciate it, counsel. The district court treated this case in a very thorough and thoughtful manner. And the three orders that are on appeal are well-reasoned and should be affirmed. Based on the initial presentation, I'm not exactly sure where to go start, but I would start, I guess, with the Second Amendment complaint. And I want to be clear that the hearing, which the transcript I think is very, very important. That's document 79, and that's the April 2021 hearing on the order for a case management change. I think it's critical in there to see how thorough the judge was in explaining what he was concerned about with the Second Amendment complaint, the history of the case, the fact that the amended complaint and the Second Amendment complaint do not resemble each other at all. In fact, counts two through four of the amended complaint are just dropped altogether. So counsel, the arguments that I understand, I think all of that is easy for us to see. I think the question is, what obligations did the district court have in reaching the decision that it did? Is there a due process requirement of additional notice and opportunity to be heard, which is what your opposing counsel is saying? And is there a requirement of findings that have been made, which also is either supported by our case law or the requirements of due process? That to me is, I think, the legal issues that we have to decide regarding the strike order. And the answer to both of those, your honor, is no. First of all, there was notice because this hearing gave an opportunity to opposing counsel to speak to this issue. The order didn't just drop on them. The court explained what he was about to do and gave opposing counsel an opportunity to talk about it. And in fact, opposing counsel did make the argument that this is just new evidence. It's not new theories. And the district judge disagreed with that, but there was a back and forth about this very issue before the order was issued. Second, this is just a matter of enforcing the court's own orders. We cited the persuasive, not binding Cincinnati insurance case and a number of district court cases that stand for the proposition that you can strike a claim or a complaint. By the way, the action was not dismissed, your honor. And I think that's a big distinction in some of these cases. The action proceeded, but proceeded on the amended complaint, counts one and six. If the action had been dismissed, would there have been a requirement for the court to have made specific findings on intent and bad faith and have used the least onerous remedy? Is that a requirement if this had been a dismissal with prejudice? If this had been a dismissal with prejudice, I think the case is closer because the cases cited by the plaintiffs indicate that in some instances. I would look though at the equity lifestyles case on Judge Shoflat's case, which could have been decided under rule 41. It's difficult to see exactly, but I'm not sure those findings were required in that case. And so I'm not sure the question is crystal clear, but that is far away from what we have. The case wasn't, the action wasn't dismissed, it proceeded. So much different circumstances. So where the court in fact gives a lesser remedy, there is no requirement for then making additional findings of bad faith and whether there's an even lesser remedy that could have been imposed. Is that what you're arguing? Yes, your honor. And I think that that's made clear by the cases we cite, Cincinnati Insurance, Kinzig, even Cave versus Singletary, which is binding in this court as to the ability to enforce your own orders. And that's what's going on here is that the district court is enforcing a very clear order as to what leave has been granted to amend. Why don't you deal with the, what I think is the main legal issue with regard to, I think it's counts two, three, and four of the amended complaint, not the second amended complaint. And that is whether a section 802 C of the Arkansas trust code stands alone as a basis in which to void a transaction, or as you argue in the district court espoused that 802 C is read together with 802 B. Yes, your honor. 802 B is the provision of the trust code that actually provides a remedy. Just a plain text reading of the two provisions together show that 802 B makes voidable the per se instance where you are benefiting for your personal interests, basically pocketing the money as a trustee, and then makes presumptively voidable the conflict situation where you have a conflict between your personal and your fiduciary interests. Subsection C simply defines what instances qualify as a conflict between your personal and your fiduciary interest. It has a list of five instances that qualify. If you as a plaintiff don't satisfy one of those five, that is what I would consider an early off ramp. You can't get back into B at all. But if you do satisfy one of those five definitions, you then need to revert back to B to determine whether there's been a breach of the duty of loyalty. And that has the conditions among which are that it was authorized by the trust agreement, or it was consented by the beneficiaries. And that is where the remedy is, is in subsection B. And to read it as plaintiffs want to read it, you would have conditions that would allow for the exception in the case of the per se situation. So if you're the trustee that's actually pocketing the money, but that's authorized or consented, those conditions would apply according to the plaintiff. But if you are merely a rebuttable presumption of a conflict between personal and fiduciary interest, those conditions do not apply. That's not a sensical or a plain text reading of how those two provisions work together. What about sections 105 and 814? The argument is that those are sort of a backstop, which say that there's still a requirement. And I'm talking about the Arkansas Trust Code. There's still a requirement of the duty of loyalty that essentially can't be completely or fully waived. Even despite the 802B allowing for some waiver of some of those duties, it can't be done in wholesale or completely. Yes, Your Honor. I have a few responses to that. First, 802 is the specific provision that deals with the duty of loyalty. And beyond that, that is the specific provision that counts two through four were pleaded on. You don't see mention of 105 or 814. I agree with you. This isn't a pleading issue. It's more of an interpretive issue. In other words, to interpret 802, you have to read it together. In other words, it's cabined by the obligation under 105 and 814 on how much can be waived. I think that's the argument that's being made. Right, and I think that 814 pretty clearly and 105 necessarily address a different situation. It addresses the uncontrolled discretion. There are limits as to what a trust settler can create a trust for. And in some circumstances, the unlimited uncontrolled discretion is such that you really don't have a trust at all. It may be called a trust, but you basically are just authorizing the so-called trustee to pocket the money and run. That's far removed from what's alleged here and certainly far removed from what actually happened here. 105 does give a backstop to that type of uncontrolled discretion and 804 expressly, I'm sorry, 814 expressly does that. So at some very general level, it cabins the reading of 802, but not in these circumstances. And here 802 is what was pleaded and it's what specifically is applicable to what's being alleged, which is a breach of the duty of loyalty because of a conflict between the trustee and WVR. What more needed to be pleaded for count five in order to state a claim? So section 100 and 1003A of the Arkansas Trust Code states that a trustee is accountable to an affected beneficiary for any profit made by the trustee arising from the administration of the trust, even absent a breach of trust. And it's alleged that there was a surplus trust fund balance that the trust that Fairchase was exclusively using for its own and that it was collected through a positive trust balance through excess fees. What more needed to be pleaded in order to state a claim for that? Well, there has to be some sort of allegation that establishes why this is actually profit and it's not profit. This is being held in trust. There needs to be an allegation that it's being misused or being used as profit. The surplus funds, there is zero evidence and zero allegations of any nefarious use of this surplus. It is being used for the program that the members of the program want to have, you know, and are generally satisfied with. The trust is not being misused. There are no allegations of nefarious conduct. There's no allegations of any personal profit being used from the surplus. The board members don't get paid. There are no salaries paid. It's all volunteer service by the board. And the entire surplus is being held in trust for the program, for the members. If you could address for me the summary judgment order. So the argument, as I understand, your opposing counsel will be making with regard to that is even if we can't allege these new theories, there's still evidence to suggest by violations of the bylaws and by a failure to conduct due diligence on Wyndham as a manager, that that goes to the violation of the duties of loyalty that are in fact part of counts one and six that are still viable and we're still around at summary judgment time. Right. I think we start again with the district court determining that these are actually new theories. They are not just evidence. That argument was actually made to the judge that this is just evidence. And the judge rejected that. So the judge is already in his discretion determining that these are actually new theories being injected into. Let's assume for the moment I disagree with that. In other words, let's assume that I think that it's at least some evidence that is at least arguably relevant for the summary judgment calculus on the duty of loyalty violations that are alleged in counts one and six. So why would that evidence, even if you considered it be sufficient or insufficient to go forward on summary judgment? Okay, I think it also falls outside the scope of the way count six was pleaded. As the judge said at the hearing, anything could be argued to be a breach of fiduciary duty, but you've pleaded this a certain way. If you look at the eight subsections that were pleaded under count six, they all track what was pleaded for counts two through five. And it was not framed up as a case having to do with a duty to vote or hold a vote. And so the evidence as to the bylaws are not relevant to the way it was pleaded. It's relevant to a duty to hold a vote. And so we don't believe that it has any bearing, even if it were considered on the way count six was pleaded as to due diligence. That's really just a different way. That's trying to shift the burden back to fair share for having not looked for something that there is zero evidence that it exists. There's zero evidence that any of the fees paid to WVR were improper or excessive. There's just nothing there. There's no there there as to the fees paid to WVR. And as to the surplus, there's no evidence that there's anything nefarious or improper happening with the surplus. All right, with your last remaining time, I'm interested to hear your answer to some of the questions Judge Joflat asked about there being a possible inherent conflict between the class members that would implicate rule 19. Mr. Lang. I'm sorry. You represent fair share, and I suppose your client is really the board of directors. Yes, Your Honor. Is that about, that's the management of the fair share. What I want to know is whether or not there is evidence, probative evidence, that some of the 400,000 people who are fair shareholders are opposed to the remedies that the plaintiffs seek. Hello. I think there is, oh, sorry, Your Honor. What I want to know is whether or not out of the 400,000 in the class, there are some class members who are opposed to the remedy the plaintiffs seeks because it's against their, because it's against their best interest. There are certainly your class members, Your Honor, that are happy with the program, and I think it would definitely be against their interests to have the program upset. All right, my point is that that immediately triggers an inquiry under rule 19, which this court is required to, both the district court and this court, required to consider sua sponte under the law. And that if there is a group, for example, who would rather have the status quo anti-maintained, then they've got to be made defendants in the case or the case got to be dismissed. The rule 19 problem and the class certification problem and the due process problem are all tied together. Do you follow me? Yes, Your Honor. Do you disagree with anything I've said? No, Your Honor, although I think affirming the orders on appeal would be warranted. I know what's on appeal, but I'm looking at it from a sua sponte option standpoint. The obligation to look at the beginning of the case is brought as a class action. There's a representation made under rule 11 by class plaintiffs that the class is capable of, well, let's say it doesn't have segments opposing each other. That's a rule 11 representation. And then under the law, going to valley, drugs, for example, notwithstanding valley drugs, you'd still certify a class. You follow? Yes, Your Honor. So the fact that this is not an issue on appeal, my own view is we have a sua sponte obligation to see it in the face of what's in this record and especially your experts about the surveys they made. Yes, Your Honor. But I would suggest that if it's otherwise affirmable on the reasoning of the three orders of the court, that maybe you could not need to go back in time and do that if it's otherwise affirmable. Oh, I understand that. And one of the problems though is that they can bring another case. And if the truth of the matter is that there are opposing parties amongst the members, then the case can't be brought at all without joining them as defendants. The next time they sue, they'd be running into a rule 19 problem. Thank you. I understand, Your Honor. Thank you, counsel. We'll return back to the rebuttal for the appellants. You have five minutes, counsel. Thank you, Your Honor. On the issue of summary judgment evidence and whether it was sufficient, I'd just like to highlight one thing that the district court said. The summary judgment order says, quote, if plaintiffs could demonstrate the defendant trustee fair share supervisory role as trustee was abdicated due to its interactions with WVR, the provision for WVR's role as plan manager in the terms of the trust could not save defendant fair share. We proved that. We proved that fair share utterly abdicated any oversight role over Wyndham. But if the underlying claim for breach of duty under counts one and three is that fair share entered into a management agreement with a company that it was affiliated with, and that is the basis of the claim, the fact that the trust document specifically not just authorizes it but requires it would seem to take out any due diligence requirement. In other words, if you as trustee, if the settler requires the trustee to act in a specific way and only that way, and the trustee does that, I don't see how the trustee is required to then conduct due diligence to do exactly what it was required to do. Well, I think it falls back to the statutory provisions you were referring to earlier, 814 and 105. Everything has to be done in good faith. Yeah, but I think the distinction there is, it seems to me that, and I agree with you, the lines are not 100% clear on this, so the argument isn't a frivolous one, but where the trustee's invested with discretion, it has to exercise that discretion to the extent it has it consistent with its duty of loyalty. And 814 clearly indicates that it has to be done consistent with the trust document. But where the trust document, the intent of the settler is that the trustee act in a specific way. You give $100 to grandma every single January 1st from now until when grandma passes away, trustee has to do that whether it's in the interest of all the beneficiaries or not. And it seems to me that Wyndham being the manager is grandma in that hypothetical. I would just say the district court's reasoning didn't seem to align with that, and I'm not sure that it does. I think even when the trust permits something to be done expressly, for example, in the Roney case, it gave that trustee uncontrolled discretion to do what he wanted with these things, and the court says- that's not this though. I mean, I agree with you. If we had that case, there's no doubt that that principle would apply. In other words, if the trust document was fair share, you get to pick whoever you want, and then it goes and picks the company with which it's affiliated, then I think we would have a much closer case. But if the trust document says you must, as the initial management entity, hire this company, and they do that, and that's disclosed to everybody, everybody knows this, I just don't see how we could say even if they admit we didn't do any due diligence, we just did what the trust document told us to do, how that could be a violation. I'm having trouble seeing that. I think it's the course of dealing, right? We're not just talking about an initial hiring, right? We're talking about years and years and tens of hundreds of millions of dollars over the course of time. Look at the due diligence. The quote that you, that part of the record that you cite from says that we did not do due diligence in the initial selection of Wyndham. That's what that due diligence quote, that part of the record, is directed towards. And the answer is because we were required under the trust document to hire them, right? I disagree. I think that deposition from the corporate representative went into what do you do to determine whether any of these amounts that Wyndham is telling you to pay are fair or reasonable. And the answer was we don't do anything. I do wanna touch on the 802B versus 802C issue. I think the distinction does make sense, why these two things are treated differently. A self-dealing, self-dealing claim under 802B is void regardless of whether it's fair unless it meets one of the exceptions. An 802C transaction, a third party sort of self-dealing is voidable, presumptively voidable unless the trustee proves that it's fair. Where do we see the word voidable in 801C? In 802C? Sorry, 802C. It's in the comments. That's the problem, I think. I just don't see how we can go to the comments and then read that into 802C where there's no indication that it's a remedy provision. In other words, it doesn't say any transaction is voidable if and then lays out those presumptions. It just says these are for a trustee and third party, these are presumed to have a conflict. And that language seems to dovetail exactly with the language in the provision that does say voidable 802B, right? I think the commentary is clear that these 802B and 802C have their own remedies and they are distinct. Thank you, your honor, I seem to have time. Thank you. We appreciate both counsels. Thank you so much. All right.